# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BURLINGTON NORTHERN & | ) | |
| SANTA FE RAILWAY COMPANY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 14-CV-69-CVE-PJC** |
| | ) | |
| PATRICK PILGYUN HAN, M.D., | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

This matter was referred to the undersigned United States Magistrate Judge for hearing on a "detailed discovery plan." [Dkt. No. 29]. The parties have fully briefed their positions [Dkt. Nos. 33, 34, 38 & 39]. In addition, Defendant has submitted some 550 pages of exhibits for the Court's consideration. Most of these are pleadings related to discovery in an earlier State court action. Additional exhibits, including the settlement documents relating to this matter, were produced to the Court at a hearing conducted December 23, 2014 ("the December 23 hearing").

This is an action for contribution pursuant to Okla. Stat. tit. 12 § 832. Burlington Northern & Santa Fe Railway Co. ("BNSF") has sued Dr. Patrick Han ("Han"), alleging that Han is a joint tortfeasor in causing the death of Jamie Kay Detre ("Detre"). In 2010, BNSF paid $1 million to settle a wrongful death action

brought by the Estate of Detre ("the Estate").  BNSF now seeks to have Han

assessed a proportionate share of their alleged common liability.

# I
## ANATOMY OF THE LITIGATION

In September 2004, Detre was injured when her vehicle collided with a

BNSF train at one of BNSF's railway crossings in Creek County, Oklahoma.  In

December 2005, Detre sued BNSF and certain individuals associated with BNSF

for her personal injuries resulting from the train-motor vehicle collision ("the

underlying action").[1]  While the underlying action was pending, Detre developed

a carotid cavernous fistula ("CCF").[2]  On August 26, 2006, Detre received

emergency treatment from Han.  Detre died while undergoing treatment.  At the

time of her death, Detre was approximately 42 years old and was survived by

her mother and her children.  [Dkt. No. 2, Ex. 2, ¶¶ IV-V].

In November 2008, the underlying action was amended, substituting the

Estate as Plaintiff, and adding a claim for wrongful death.  Han was not named

---

[1]      *Jamie Kay Detre v. Burlington Northern Santa Fe Railway Co., et al.*, Case No.
D-CJ-2005-29 (Creek County Dist. Ct.).  For simplicity, the Defendants in the
underlying action will be referred to collectively as "BNSF."

[2]      A CCF is an abnormal passage between an injured carotid artery and the
cavernous sinus or orbital veins.  The veins may swell and press against various
ocular nerves, causing visual problems.  *Dorland's Illustrated Medical Dictionary*
720 (31st ed.).

in the amended action.[3]  In the fall of 2010, following private mediation, BNSF

and the Estate settled the underlying action ("the Settlement") for $1 million.[4]

Although he was not a party to the underlying action and had not participated

in the mediation, Han was included in the Release of All Claims ("the Release")

negotiated between BNSF and the Estate.[5]

In May 2011, BNSF sued Han in Tulsa County District Court for

indemnification and contribution with regards to the settlement sum paid to the

Estate[6] ("the Tulsa County action").  The court in the Tulsa County action made

a number of rulings on discovery and deposition discovery began before BNSF

dismissed the case without prejudice in August 2013.  BNSF then filed the

instant case on February 18, 2014.  [Dkt. No. 2].  In this action, BNSF asserts only

a claim for contribution.  [*Id.*].  Disputes continue over the permissible scope of

---

[3]    Han has argued that at the time of the amended Complaint, the Statute of
Limitations had run as to any claim by the Estate against him.  *See* Dkt. No. 19.
However, this Court has held that any such bar to an action against Han by the
Estate, does not bar the pending contribution action by BNSF.  *BNSF v. Han*, 2010
WL 4199226, *3 (N.D.Okla. Aug. 22, 2014).

[4]    The settlement documents recite that the $1 million was paid on or before
Oct. 1, 2010.  Approximately $95,000 of the settlement sum was designated to
pay five medical providers.  [BNSF0020-27].

[5]    BNSF and the Estate executed a Mediation Agreement on August 9, 2010,
setting forth the bullet points of the settlement.  Han was not mentioned in this
Agreement.  Seven weeks later, BNSF and the Estate executed the formal
settlement documents, including the Release, which expressly released Han.

[6]    Case No. CJ-2011-2916, *Burlington Northern & Santa Fe Railway Co., et al. v.
Patrick P. Han* (Tulsa County Dist. Ct.) (dismissed Aug. 13, 2013).

discovery in this contribution action, and the matter has been referred to the undersigned to assist the parties in fashioning a discovery plan.

## II
## THE DISPUTE OVER DISCOVERY

The parties have very different views of what discovery is permissible. BNSF would limit discovery to two issues: (1) whether Han committed medical malpractice in his treatment of Detre; (2) Han's share of the common liability for aggravation of Detre's injuries. [Dkt. No. 33, at 9].

On the other hand, Han seeks discovery into a broad range of topics including the subjective thoughts of BNSF's managers, agents and corporate representatives regarding the underlying action and the Settlement, [Dkt. No. 43, p. 5-6], BNSF's possible exposure to punitive damages in the underlying action, how Han came to be added to the Release executed by BNSF and the Estate, and litigation positions taken by BNSF in the underlying action, the Tulsa County action and the instant action. Han's proposed discovery covers a wide array of topics and a lengthy time period. [*See*, Dkt. No. 34, *Defendant Han's Discovery Brief in Accord with Court order Dated October 20, 2014*, at 5-6 and exhibits "A" and "B" attached thereto]. For example, Han seeks depositions of BNSF representatives concerning "how and why" the settlement was reached in the underlying action, records concerning the railroad crossing at issue "for 15 years preceding this collision," all known failures of the signal system at the railroad crossing "for a period of not less than 5 years preceding the subject incident."

[Dkt. No. 34, Ex. "B"].  Han asserts that he is entitled to this discovery to determine the reasonableness of the settlement, why he was included in the Release, explore issues pertaining to possible punitive damages against BNSF in the underlying action, determine whether the Settlement was done in good faith, and determine the appropriate allocation of fault for Detre's death, among other things.

### III
### APPLICABLE LEGAL PRINCIPLES

In a Federal case premised on diversity jurisdiction, the right to contribution is considered substantive and controlled by state law.  *Smith v. Whitmore*, 270 F.2d 741 (3d Cir. 1959); *Fort Worth & Denver Ry. Co. v. Threadgill*, 228 F.2d 307 (5th Cir. 1955); *ICI Am. Inc. v. Martin-Marietta Corp*, 368 F.Supp. 1148, 1150 (D.Del. 1974).  Oklahoma has adopted the Uniform Contribution Among Tortfeasors Act ("UCATA"), Okla. Stat. tit. 12 § 832.  Pursuant to that Act, "When two or more persons become jointly or severally liable in tort for the same injury to person or property for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them...."  Okla. Stat. tit. 12 § 832(A).  A primary purpose of the statute is to provide "judicial control over the distribution of damages in tort claims in which there is more than one tortfeasor."  *BNSF v. Han*, 2014 WL 4199226, *2 (N.D.Okla. Aug. 22, 2014) (*citing Barringer v. Baptist Healthcare of Okla.*, 22 P.3d 695, 698 (Okla. 2001)).

A second underlying goal of UCATA is to encourage settlement of lawsuits. 12 U.L.A. § 1, p. 203, comment to Subsection (d) (2008); *Healthcare Staffing Solution, Inc. v. Wilkinson*, 86 So.3d 519, 522 (Fla. Dist. App. 2012) (a purpose of UCATA is to encourage settlement and avoid lengthy litigation of claims). A tortfeasor who settles a claim against him knows that he is protected against contribution claims brought by non-settling tortfeasors (Okla. Stat. tit. 12 § 832(H)(2)), and that under certain circumstances, he can pursue a contribution claim against a non-settling tortfeasor for his proportionate share of the common liability. *Id.* at § 832(B). It is this latter, offensive, use of contribution that is involved in this action.

A settling tortfeasor is entitled to contribution only when it has paid more than its pro-rata share of a common liability. *Berry v. Empire Indem. Ins. Co.*, 634 P.2d 718, 719–20 (Okla.1981). A tortfeasor's pro-rata share is determined based on its proportionate degree of fault for the common liability. *Nat'l Union Fire Ins. Co. v. A.A.R. Western Skyways, Inc.*, 784 P.2d 52, 57 (Okla.1989). "A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable." Okla. Stat. tit. 12 § 832(D); *BNSF v. Han*, 2014 WL 4199226, *2, [Dkt. No. 22].

A settling tortfeasor's right to contribution is limited only by the requirement that the settlement be made "in good faith." Okla. Stat. tit. 12 § 832(H); *Dubina v. Mesirow Realty Dev., Inc.*, 719 N.E.2d 1084, 1088 (Ill.App.3d 1999). Generally, the right to settle is not affected by whether a joint tortfeasor received notice and an opportunity to participate in the settlement negotiations. Jerome Wahlert, Annotation, *Contribution Between Joint Tortfeasors as Affected by Settlement with Injured Party by One or More Tortfeasors*, 17 A.L.R.6th 1, § 20 (2006) (hereafter, "Wahlert").[7] The Oklahoma contribution statute contains no such notice requirement, and in similar situations, courts have been unwilling to imply such a requirement. *E.g., Hodges v. U.S. Fidelity & Guaranty Co.*, 91 A.2d 473 (D.C. 1952) (applying Maryland law) (court had no right to imply a notice condition in the statute that the Maryland legislature specifically omitted).

Faced with a contribution lawsuit, an alleged non-settling tortfeasor may assert any available defense, including that it was not a tortfeasor or liable to plaintiff, that the settlement was not reasonable because the settling tortfeasor paid more than plaintiff's claim was worth, or because the settlement was not made in good faith. *Barringer*, 22 P.3d at 698-99; 18 Am.Jur.2d *Contribution* § 119 at 131 (2004).

---

[7] Although some courts have held that failing to give notice to a non-settling tortfeasor does affect contribution rights, these decisions appear to be premised on factors unique to that jurisdiction. *E.g., Fishbach-Natkin, Inc. v. Shimizu Am. Corp.*, 854 F.Supp. 1294 (E.D.Mich. 1994) (A Michigan statute required that a joint tortfeasor be given notice and an opportunity to participate in settlement negotiations.). *See*, Wahlert at § 19.

This discussion of the nature and purpose of contribution informs the Court's decision as to the scope of discovery. For purposes of discovery, "relevance" has a broad meaning because discovery "is designed to help define and clarify the issues." *Intl. Bhd. of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, 2012 WL 1801979 (D.Colo. May 16, 2012) (*quoting Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995)). However, while the concept of relevance for discovery purposes is broad, it is not unlimited. *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010). The mere fact that a plaintiff offers a "broad theory of the case" does not automatically justify equally broad discovery, "unless the discovery is relevant to the plaintiff's actual claims or defenses." *In re Cooper Tire & Rubber*, 568 F.3d 1180, 1193 (10th Cir. 2009). Trial courts have broad discretion in managing discovery matters and are subject to review only for abuse of discretion. *Smith v. Sentinel Ins. Co.*, 2011 WL 2883433, *1 (N.D.Okla. July 15, 2011).

## IV
## DISCUSSION

### A. Nature of Claims and Defenses

There are two prongs to BNSF's claim against Han. First, in order to prove a medical malpractice claim against Han, BNSF must establish: (1) duty of care owed by Han to Detre; (2) breach of that duty; (3) injury; and, (4) causation. *Jennings v. Badgett*, 230 P.3d 861, 865 (Okla. 2010); *Guideone Am. Ins. Co. v. Shore Ins. Agency, Inc.*, 259 P.2d 864, 870 (Okla. Civ. App. 2011). Discovery here will

focus on BNSF's assertion that Han breached a duty of care to Detre and that this breach caused or contributed to Detre's death. Development of these issues will undoubtedly rely heavily on expert testimony.

It is the second prong of BNSF's claim that lies at the core of these parties' discovery disputes. Under the second prong of its claim, BNSF must establish its right to contribution by showing: (1) that BNSF and Han share a common liability for Detre's death, Okla. Stat. tit. 12 § 832(A); (2) that BNSF's settlement with the Estate was reasonable, Okla. Stat. tit. 12 § 832(D); and, (3) that BNSF paid more than its proportionate share of the liability based on its share of fault. Okla. Stat. tit. 12 § 832(B), *Natl. Union Fire Ins. Co. v. A.A.R. Western Skyways, Inc.* 784 P.2d 52 (Okla. 1989).

In defense, Han is entitled to contest the contribution claim by showing that the Settlement was the product of bad faith. *Barringer*, 22 P.3d at 698. BNSF must make a *prima facie* case of good faith by showing that it and Han have a common liability to the Estate, that BNSF settled the Estate's claims as to BNSF and Han, and that BNSF paid the settlement sum. *Southcrest, L.L.C. v. Bovis Lend Lease, Inc.*, 2012 WL 3886093, *4 (N.D.Okla. Sept. 6, 2012). Han can then challenge whether the Settlement was conducted in good faith.

Ultimately, the finder of fact must make three determinations in a contribution action: (1) the amount of the "common liability," (2) the identity of each person who contributed to the injury that gave rise to the tort claim, and

(3) the percentage of fault attributable to each of those persons. *Healthcare Staffing*, 86 So.2d at 521. Where a tortfeasor brings a contribution action following settlement of a tort claim, the amount paid to settle the underlying claim represents the "common liability." *See City of Tucson v. Superior Court*, 798 P.2d 374, 379 (Ariz. 1990) (holding that "common liability" under UCATA is established "either by verdict or through settlement."). *Accord Healthcare Staffing*, 86 So.3d at 522 (interpreting phrase "entire liability" used in Florida's version of UCATA).

## B. General Areas of Discovery

### (1) Discovery Regarding Reasonableness of the Settlement

Under Oklahoma law, Han can contest the "reasonableness" of the Settlement on the ground that BNSF "paid more than the claim was worth." *Barringer*, 22 P.3d at 698. Actually, the reasonableness of the settlement sum can arise in two scenarios; however, neither of them is present in the instant case. The first scenario arises where a settling tortfeasor pays a disproportionately low settlement sum *and* does not secure a release for other joint tortfeasors. In this situation, in a subsequent action by the plaintiff against the non-settling tortfeasor, the non-settling tortfeasor would be prejudiced because the set-off it would receive of the settling tortfeasor's settlement sum would leave it with a disproportionately high share of the liability. Some courts have found that this scenario can indicate bad faith. *E.g., Tech-Bilt v. Woodward-Clyde & Assoc.*, 698

P.2d 159, 163-68 (Ca. 1985). This situation is not present here, however, because BNSF did secure a release of Han in connection with BNSF's settlement of the underlying action. Thus, Han would enjoy the benefit of a disproportionately low settlement between BNSF and the Estate, because his liability is limited to his share of an unusually low sum.

The second scenario arises where the settling tortfeasor pays "more than the [plaintiff's] claim was worth." *Barringer*, 22 P.3d at 698. But Han does not contend that the $1 million settlement sum was excessive; to the contrary, he has stated on several occasions that the reasonableness of the $1 million settlement sum is not an issue, rather it is the allocation of that amount. Han stated in his Reply Brief in Accord with Court Order Dated October 20, 2014 [Dkt. No. 38]:

> [T]he issue is less about reasonableness (given BNSF's massive exposure, <u>there is every reason to think BNSF may have paid too little in settlement rather than too much</u>) but rather about *allocation.*

[Dkt. No. 38, at 5 (emphasis added)].

At the December 23 hearing, counsel reiterated that the $1 million settlement sum was not excessive considering BNSF's exposure and that a settlement demand from the Estate was several times the settlement sum. Based on these representations, there is no need for discovery into the reasonableness of the settlement sum.

Furthermore, even if the reasonableness of the settlement sum were in dispute, there are multiple reasons why the discovery Han seeks is improper.

First, reasonableness is determined using an objective, not subjective, test. *White Electrical Servs. v. Franke Food Sys., Inc.*, 2010 WL 1992586, *2 (N.D.Okla. May 14, 2010) (reasonableness of settlement is an objective determination based on circumstances existing at that time; subjective thoughts of party, lawyers, and insurers are not relevant); *Wilshire Ins. Co. v. Tuff Boy Holding, Inc.*, 103 Cal.Rptr.2d 480, 489-90 (Cal.Ct.App. 2001) (settlement must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be).  The standard is "what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim." *Home Ins. Co. v. Advance Machine Co.*, 443 So.2d 165, 168 (Fla. Dist. App. 1983) (applying Florida law under the UCATA); *accord, Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn. 1982).

As Han points out, *Home Ins. Co.* indicates that certain subjective considerations may be considered in applying this objective test.  These include: the degree of certainty of the tortfeasor's subjection to liability, the risks of going to trial, and the chances that the jury verdict might exceed the settlement offer. *Home Ins. Co.*, 443 So.2d at 168.  However, none of these subjective considerations are at issue.  Han has conceded that the $1 million settlement sum is not unreasonably high.  Han has acknowledged that BNSF faced "massive" liability, *i.e.*, the risk of going to trial and facing a much higher jury verdict.

In addition, allowing deposition of the persons who negotiated a settlement, as Han seeks here, would generally breach public policies regarding the confidentiality of settlement negotiations and would specifically undermine one of the primary purposes of UCATA – to encourage settlements. *E.g., Jacobs v. Flynn*, 749 A.2d 174, 188 (Md.App. 2000); *Converse v. James*, 974 P.2d 1051, 1063 (Haw. App. 1997). Parties would hardly be encouraged to settle lawsuits if they understood that their "confidential" negotiations were not confidential at all. Han's proposed discovery would do grave harm to the settlement process – in the interest of exploring an issue that Han has conceded is not in dispute.

Finally, Han has cited *Home Ins. Co.* in support of his argument regarding discovery of subjective settlement considerations. While *Home Ins. Co.* holds that the test for reasonableness is an objective determination, the opinion also states that some subjective considerations may be considered where appropriate. *Home Ins. Co.*, 443 So.2d at 168-89. Han's view is that the Oklahoma Supreme Court adopted this subjective approach to determining reasonableness of a settlement sum when it cited *Home Ins. Co.* in its decision in *Barringer, supra*.

The Court rejects such a reading of *Barringer*. *Barringer* included *Home Ins. Co.* in a string citation of several cases for a narrow and simple proposition: that a non-settling tortfeasor may assert such defenses as unreasonableness and bad faith in response to a contribution claim. *Barringer*, 22 P.3d at 698-99 (*citing Home Ins. Co.*, 443 So.2d 165. There is nothing in *Barringer* that indicates the

Oklahoma Supreme Court was taking any position on the scope of discovery in contribution actions, let alone that it was adopting the position that Han advocates here.

For these reasons, the Court finds that discovery into the reasonableness of the $1 million settlement sum is not relevant to the claims and defenses herein. Depositions and other discovery as to how the settlement was negotiated and what occurred during negotiations are improper.

### (2) Discovery Related to Bad Faith

It is clear that under Oklahoma law, a contribution defendant may defend on the ground that a settlement between a settling tortfeasor and plaintiff was secured in "bad faith." *Barringer*, 22 P.3d at 698. However, it is far less clear what constitutes "bad faith" in this context. Han contends that he is entitled to conduct discovery into such areas as BNSF's motivation for settling and its subjective considerations in reaching a settlement with the Estate, its reasons for adding Han to the Release, internal communications regarding adding Han, and the like. A review of relevant legal authority finds scant support for this sort of discovery.[8]

The term "good faith" appears in one provision of UCATA:

---

[8]    For a lengthy and detailed analysis of the test for "bad faith" in contribution cases, *see Troyer v. Adams*, 77 P.3d 83, 98-115 (Haw. 2003). *See also, Tech-Bilt, Inc.*, 698 P.2d at 162-68 & 168-73 (dissent). The concept of "good faith" settlement is the subject of an article by Florrie Young Roberts, *The Good Faith Settlement: An Accommodation of Competing Goals*, 17 Loy. L.A. L. Rev. 841 (1984) (hereafter, "Roberts").

H. When a release, covenant not to sue, or a similar agreement is given **in good faith** to one of two or more persons liable in tort for the same injury or the same wrongful death:

1. It does not discharge any other tort-feasor from liability for the injury or wrongful death unless the other tort-feasor is specifically named; but it reduces the claim against others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is greater; and

2. It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

Okla. Stat. tit. 12 § 832(H) (emphasis added).

Unfortunately, the statute gives little guidance as to the meaning of "good faith" or "bad faith" in this context, or how courts determine whether a settlement has been in good faith. The commentary to UCATA states: "The requirement that the release or covenant be given in good faith gives the court occasion to determine whether the [settlement] was collusive . . . ." UCATA § 4, 12 U.L.A. 285 comment to subsection (b) (2008).

Courts have used several of tests in determining whether a settlement was entered into in good faith: (1) the proportionality or "reasonable range" test, *e.g.*, *Tech-Bilt, Inc.*, 698 P.2d 159, *River Garden Farms, Inc. v. Superior Court*, 103 Cal.Rptr. 498 (Cal. App. 1972); (2) the tortious conduct or collusion test, *e.g.*, *Dompeling v. Superior Court*, 173 Cal.Rptr. 38 (Cal. App. 1981), *Copper Mountain, Inc. v. Poma of Am., Inc.*, 890 P.2d 100 (Colo. 1995), *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin*, 828 P.2d 745, 759 n.34 (Alaska 1992), *Noyes v. Raymond*, 548 N.E.2d 196, 199 (Mass. App. 1990), *Friend v. Dibble*, 475 N.Y.S.2d 765

(N.Y.Sup. 1984); and (3) the totality of the circumstances test, *e.g., Troyer*, 77 P.3d 83; *Velsicol Chem. Corp. v. Davidson*, 811 P.2d 561, 563 (Nev. 1991), *Johnson v. United Airlines*, 784 N.E.2d 812, 821 (Ill. 2003), *Mahathiraj v. Columbia Gas of Ohio, Inc.*, 617 N.E.2d 737, 742 (Ohio App. 1992).

Noting the lack of authority on this issue, this Court has previously determined that Oklahoma courts would adopt the "totality of the circumstances" test in determining good faith under Okla. Stat. tit. 12 § 832. In *Southcrest, L.L.C.*, 2012 WL 3886093, the Court reviewed the various tests for good faith settlement and found:

> The last approach commits to the court's discretion a determination of good faith in light of the "totality of the circumstances." While the court may consider the proportionate liability of the settling party to the non-settling party where appropriate, the court is not required "to consider it in every case or in cases where such calculations would be of little value in good faith determinations."

*Id.* at *3 (citations omitted).

In the totality of circumstances test, courts have discretion to examine only those factors that arise in the individual case before them. *Brooks v. Wal-Mart Stores, Inc.*, 535 S.E.2d 55, 62 (N.C. App. 2000) (Factors a trial court considers depend on the circumstances of the individual case. "[M]andating that the court perform all factors in every case would indisputably be disruptive of, and discouraging to, settlement." *Id.* Thus, Courts may consider "the proportion and amount of liability the settling and nonsettling parties might respectively bear at trial, but are not specifically required to make proportionate liability

calculations." *Mahathiraj*, 617 N.E.2d at 742. Courts may also consider whether the party challenging the settlement "has demonstrated evidence indicating collusion, fraud or other tortious or wrongful conduct on the part of the settling parties." *Id.*

### (3) Discovery Under the 'Totality of Circumstances' Test

The test adopted by this Court informs the decision as to the scope of permissible discovery. The key, then, is to tie discovery to the factors the Court should consider in determining whether BNSF's settlement with the Estate was the product of good faith.

### (a) Proportionate Liability of BNSF to Han

The Court may consider proportionate liability, but is not required to do so "in cases where such calculations would be of little value in good faith determinations." *Southcrest*, 2012 WL 3886093, *3 (*quoting Mahathiraj*, 617 N.E.2d at 742.). For the reasons set forth above discussing the reasonableness of the settlement sum, the Court finds that this factor is of little value to the good faith determination to be made herein. The settlement between BNSF and the Estate did not assign any percentage of liability to either BNSF or Han; thus, this issue is not relevant here. The allocation of proportionate liability will ultimately be resolved in the trial of this matter. A preliminary good faith analysis would chiefly focus on the reasonableness of the amount BNSF paid to

settle the underlying action, and as set forth above, "reasonableness" is not at issue here.

**(b) Collusion, Fraud or Other Tortious Conduct**

The Court may consider evidence that indicates collusion, fraud or other tortious or wrongful conduct on the part of the settling parties. *Id.* Han is entitled to explore these issues in order to provide the Court with the evidence necessary to attack whether BNSF and the Estate conducted their settlement in good faith.

In addressing this issue, BNSF bears the initial burden of showing that the Settlement was conducted in good faith. At a minimum, this requires proof of the existence of a legally valid settlement agreement, including proof of consideration given and received. *Southcrest*, 2012 WL 3886093, *4 (*citing Johnson*, 784 N.E.2d at 819). Once this *prima facie* evidence is produced, a presumption arises that the settlement was made in good faith. *Id.* The evidentiary burden then shifts to Han to establish that the settlement was not in good faith. *Id.* It is unclear whether Han faces a simple preponderance of the evidence test or the more exacting clear and convincing test. *Id.*

Thus, Han is entitled to discovery to determine whether there has been collusion between BNSF and the Estate in reaching this settlement, but this should be a narrowly focused effort. For example, Han is entitled to explore the relationships between the parties, *i.e.*, whether there is some personal

relationship between BNSF and the Estate or its representative that indicates a collusive settlement may have occurred. Han is entitled to explore discovery as to whether the $1 million settlement sum was fully and irrevocably paid. *See e.g., In re Babb*, 642 N.E.2d 1195, 1204-07 (Ill. 1994), where the settling parties entered into a "loan-receipt agreement" whereby the settling tortfeasor's settlement payment was actually a loan to the plaintiff to be repaid out of damages collected from non-settling tortfeasors. "Because loan-receipt agreements violate the terms of and the policies underlying the Contribution Act, we conclude that such agreements may not be considered 'good faith' settlements within the meaning of the Contribution Act." *Id.* at 1207. Other collusive situations include those where the settling parties "manipulated the settlement allocation to deprive the nonsettling defendant of his right to a setoff," *Id.* at 1205 (*citing Blagg v. Ill. F.W.D. Truck & Equipment Co.*, 572 N.E.2d 920, 924 (Ill. 1991)), or where the settlement was intended solely to shield a family member of the plaintiff from liability on a cross-claim. *Int'l Action Sports v. Sabellico*, 573 So.2d 928 (Fla.Dist. App. 1991). The fundamental issue has been summarized thus:

> If the 'good faith' condition is to have any meaning at all consistent with the underlying purposes of the [UCATA], we believe that it prevents a claimant from arbitrarily deciding how much each tortfeasor will pay on the basis of which tortfeasor has been more cooperative with claimant.

*Sobik's Sandwich Shops, Inc. v. Davis*, 371 So.2d 709, 711-12 (Fla.Dist. App. 1979).

"[T]he issue of whether a settlement is in 'good faith' presents itself only when the nonsettling tortfeasors think that the settling tortfeasor is paying less than his or her fair share."  Roberts, 17 Loy. L. A. L. Rev. at 843, n.12.  At this juncture, BNSF has paid the full settlement sum, releasing itself and Han; thus, Han can hardly complain that he has been required to pay more than his fair share of the common liability – it has not yet been determined what, if anything, Han may be required to contribute.[9]

Han asserts that BNSF acted in bad faith in adding him to the final settlement agreement between BNSF and the Estate.  Han complains that he was added to the settlement solely for the purpose of allowing BNSF to seek contribution from him.  Han points out that he was not named in the bullet-point settlement terms negotiated on August 9, 2010, but was added to the formal settlement Release seven weeks later.  Han says this is evidence of bad faith.  The Court disagrees for several reasons.

First, the Court rejects the notion that the fact that Han was not mentioned in the settlement until the final Release indicates bad faith.  It is not unusual for parties to continue negotiating the terms of a settlement after they have reached an initial agreement.  Apparently, the Estate had no objection to adding Han to the Release.  Furthermore, it would likely constitute malpractice

_____

[9]    Han suggests that discovery is necessary as to "the meaning and interpretation of the language in the Settlement Agreement purporting to release Dr. Han."  [Dkt. No. 39, at 3].  The undersigned finds no ambiguity in the language of the Release.  *See* discussion at section IV(C)(4)(h), *infra*.

if BNSF had not obtained a Release of any non-settling tortfeasor from whom it intended to seek contribution. Absent some showing that the Estate was defrauded by BNSF in this regard or colluded with BNSF to Han's disadvantage, this does not amount to bad faith. There is nothing before the Court that indicates that the Estate was not agreeable to the final terms of the settlement and the release of Han. Furthermore, it seems clear why Han was added to the settlement. Oklahoma law requires that Han be named in the Release in order for BNSF to pursue a contribution claim. Okla. Stat. tit. 12 § 832(D).

The good faith requirement is not meant to police BNSF's motivation for settling, but to ensure that the settlement does not unfairly apportion responsibility among joint tortfeasors.

The Court concludes that discovery such as depositions of those who participated in the mediation or decided to settle the underlying case is not relevant to the claims or defenses herein and is not reasonably calculated to lead to discovery of admissible evidence. Furthermore, such discovery would destroy the confidentiality of the settlement process and undermine the purposes of UCATA.

(4) **Discovery Related to Punitive Damages in the Underlying Action**

Han seeks broad discovery regarding the Estate's "alleged basis for the punitive damages claim against BNSF in the Creek County lawsuit." [Dkt. No. 34,

p. 6].  Han asserts that such evidence could affect the factfinder's allocation of fault in this action.

While there is little guidance from Oklahoma cases as to how to address this issue, after reviewing cases from other jurisdictions as well as the policy goals of UCATA, the Court finds that Oklahoma would adhere to several basic principles guiding discovery in a contribution action arising from an underlying lawsuit where allegations of punitive damages were made:  First, it is clear that a tortfeasor guilty of intentional misconduct has no right of contribution under Oklahoma law.  12 O.S. § 832(C) ("There is no right of contribution in favor of any tort-feasor who has intentionally caused or contributed to the injury or wrongful death."); Restatement (Second) of Torts § 886A(3).  There is nothing in the record before the Court of any contention that BNSF's conduct related to the 2004 collision was intentional.

Second, a tortfeasor *specifically adjudicated* liable for punitive damages cannot seek contribution for the punitive damage portion of the verdict.  Kevin J. Grehan, "Comparative Negligence," 81 Colum. L. Rev. 1668, 1694-95 (Dec. 1981).  *E.g., Pyramid Condominium Ass'n v. Morgan*, 606 F.Supp. 592, 599 (D.Md. 1985); *Alabama Power Co. v. Marine Builders, Inc.*, 475 So.2d 168, 180 (Ala. 1985).  To allow a tortfeasor who has been adjudged liable for punitive damages to seek contribution for a portion of those damages, would undermine the purpose of the UCATA to apportion damages equitably.  This second situation does not

apply here, because there was no adjudication of punitive damages in the underlying action.

Finally, absent intentional conduct, the mere claim of punitive damages in the settled action should not open the door to wide-ranging discovery trying to parse the distinction between ordinary negligence and willful/wanton conduct. As one court has noted: "[T]he mere existence of a *claim* for punitive damages should not deprive the settling tortfeasor of the opportunity to seek proportional contribution. The claim for punitive damages may turn out to be wholly without merit." *Blackburn v. Harnischfeger Corp.*, 773 F.Supp. 296, 299-300 (D.Kan. 1991). Furthermore, under Oklahoma's comparative negligence statute, no distinction is made between degrees or kinds of negligence. *Amoco Pipeline Co. v. Montgomery*, 487 F.Supp. 1268, 1271 (W.D.Okla. 1980). To permit discovery aimed at drawing this distinction for purposes of punitive damages would subject the Court and the parties to needless satellite litigation. In the case of a settlement, where there has been no adjudication of a tortfeasor's culpability or a finding of liability for punitive damages, and where the settlement sum is objectively reasonable under the circumstances existing at the time of the settlement, the question of punitive damages is irrelevant to the central issue in the lawsuit: the proportionate fault of each of the joint tortfeasors for plaintiff's injury.

### (5) Discovery Regarding BNSF's Actions and the 2004 Accident

Han is entitled to explore the proportionate shares of liability of both the party seeking contribution and the party alleged to be liable in contribution. Okla. Stat. tit. 12 § 832(B); *City of Tucson*, 798 P.2d at 378. Thus, Han is entitled to discovery as to how the September 2004 accident occurred, the damages Detre suffered, the damages suffered by her surviving children and mother, and the like. Han also seeks discovery regarding the railroad crossing at issue *before* the 2004 accident *i.e.*, previous accidents at the site, remedial measures that were planned, condition of the warning systems in place. Under Rule 26, the Court cannot say that this discovery would have no relevance to the allocation of proportionate share of fault herein; nevertheless, such discovery should be narrowly confined to show what BNSF knew about safety issues at the crossing in the time immediately leading up to the 2004 accident. The Court finds that a two-year window is sufficient for this purpose. Thus, Han may pursue discovery concerning conditions at the railroad crossing from September 1, 2002 forward. Discovery on matters prior to September 1, 2002, is barred.

### C. Other Specific Discovery Issues

### (1) Alternative or Inconsistent Litigation Positions.

Han seeks discovery as to litigations positions that BNSF took in the underlying action and/or the Tulsa County action. The Court finds this discovery is largely irrelevant. The issue is BNSF's evidence in *this* case; however,

if BNSF proposed an expert witness in the underlying action whose report contradicts BNSF's expert(s) in this case, that report is discoverable and may be used for impeachment. BNSF is not estopped from taking a different litigation position in this case than the one it took in the underlying action, because no issues were decided in the underlying action. *See, Brown v. Felsen*, 442 U.S. 127, 139 n. 10 (1979) (citation omitted) (collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit). Discovery as to BNSF's legal theory in the underlying action is irrelevant.

(2) **Depositions of BNSF Personnel.**

Han may take a Rule 30(b)(6) deposition of BNSF as limited below. This would seem to be resolved through the completion of the deposition of Kamalah Minor. Depositions of BNSF personnel with regard to the negotiation of the settlement with the Estate and issues related to the settlement are improper. (Han may obtain any written communications between BNSF and the Estate, and drafts of the final Settlement Agreement between the settling parties.). Deposition discovery is limited to information from September 1, 2002, forward, concerning the 2004 collision. The deposition topics listed in Exhibit "B" to Han's Discovery Brief in Accord With Court Order Dated October 20, 2014, [Dkt. No. 34], are further limited as follows: Within the two-year limit imposed herein, Han may depose BNSF with respect to deposition topics Nos. 1, 3, 6, 7, 8, 12 and 13. The remaining topics are overly broad, irrelevant to the claims and

defenses herein, do not describe with particularity what information is being sought, are disproportionate to the case and/or would cause the Court to engage in long and protracted satellite litigation of little or no benefit.

(3) **Deposition topics listed pursuant to subpoena duces tecum [Dkt. No. 34-2, p. 2].**

Most of these topics are irrelevant and/or improper. For example, Topics 1 and 2 concern the reasonableness of the settlement between BNSF and the Estate. For the reasons set forth above, this is not an issue in this contribution action. Topic No. 3 has been answered by the settlement itself. *City of Tucson*, 798 P.2d at 379 ("common liability" under UCATA is established "either by verdict or through settlement."). Many of the topics concern the issues that will be determined by the factfinder at trial. Thus, discovery here is limited to Topic Nos. 9, 10, 11. However, exploration of these topics may be unproductive until after the parties have exchanged expert reports.

(4) **Discovery Topics Listed in Han's Discovery Brief [Dkt. No. 34].**

Han lists eight areas of discovery he seeks to pursue. The Court addresses each below:

(a) The reasonableness of and the basis for the settlement of the Creek County lawsuit (in the language of the state court, "how and why the settlement was reached" and the "reasonableness of the settlement").

**Ruling:**  For the reasons set forth in detail above, the reasonableness of the settlement sum is not at issue.  Han has conceded this point.  Thus, discovery on this question is not relevant to the claims and defenses as presented to this Court.  Furthermore, discovery into how the settlement was reached invades the confidentiality of the settlement process and is improper.  *See* Fed.R.Evid. 408.

(b) The allocation of fault (pro rata share) and liability for the settlement amount paid to the Estate, as between or among BNSF and any other potential tortfeasor.  This necessarily includes an assessment of the potential liability of BNSF and any other potential tortfeasor for Detre's injuries and death.

**Ruling:**  The allocations of fault and of liability are the key issues for the factfinder.  In this case, BNSF and Han are alleged to have played different roles in the ultimate injury suffered by plaintiff.

> When different parties cause different portions of an injury, the factfinder has two tasks of apportionment.  It must ascertain who caused what portion of the injury, and it must determine the relative culpability of the parties . . . .  This involves apportioning the loss both by causation and by percentages of responsibility.

Restatement (Third) of Torts:  Apportionment Liab. §7, Comment e (2000).

Discovery on the issues of fault and culpability is appropriate; however, this discovery should be focused on the facts of how the underlying collision occurred, Detre's injuries caused by that collision, the

damages flowing from those injuries, Han's role (if any) in aggravating Detre's condition, and the causal link between Han's treatment of Detre and her death.

(c) The alleged basis for the punitive damages claim against BNSF in the Creek County lawsuit.

**Ruling:** For the reasons set forth above, discovery into a punitive damage claim in the underlying action is irrelevant to the issues herein. The UCATA requires that the settlement entered into by a settling tortfeasor and the plaintiff be "reasonable" and in good faith. Han may explore the facts surrounding the September 2004 accident and facts pertaining to safety at the subject railroad crossing from September 1, 2002. This information may provide context for the duty owed by BNSF to Detre and the breach of that duty, for purposes of allocation of proportionate shares of fault. This information can be derived from the facts, not from deposition of the subjective thoughts of BNSF personnel.

(d) The facts known or assumed by BNSF's negotiators regarding responsibility for Detre's injuries and death in negotiating the settlement in the Creek County lawsuit.

**Ruling:** This discovery is improper. It would invade the confidentiality of the mediation process and would undermine a key objective of UCATA – the encouragement of settlements. Han may explore the cause of the

2004 collision and Detre's resulting injuries, but this should be focused on the *facts* of the matter, not the subjective thoughts of BNSF's settlement negotiators.

(e) Why Han was not notified of the potential settlement of the Creek County lawsuit and was not given an opportunity to participate in the negotiations.

**Ruling:** For the reasons set forth above, this information is irrelevant to the claims/defenses presented herein.

(f) What transpired at the mediation on August 9, 2010.

**Ruling:** This discovery is also irrelevant and improper and would undermine the purpose of UCATA to encourage settlements of lawsuits.

(g) The drafting and negotiation of the Settlement Agreement, including how Han came to be included in the Settlement Agreement and Release.

**Ruling:** Han is entitled to see all communications between BNSF and the Estate, as well as drafts of the Settlement Agreement; however, depositions and other such discovery of the persons who attended the mediation and negotiated the settlement will not be permitted.

(h) The meaning and interpretation of the language in the Settlement Agreement purporting to release Han.

**Ruling:** Han contends that there is an ambiguity in the Release concerning his liability. The Release releases and forever discharges BNSF from:

> any and all claims and liabilities of every kind and nature which have arisen or which may hereafter arise, together with all other damages of any nature whatsoever resulting from the collision between a train and a vehicle which occurred in Creek County, Oklahoma, on or about the 1st day of September 2004 . . . . This Agreement includes all damages, past, present or future resulting from said accident . . . . Claimants understand that this release covers all incidents and damages, expenses and future consequences of this accident. Claimants further covenant and agree that they will never institute any further suit, action at law or otherwise against the Railroad, its parent company, its successor companies, nor institute or prosecute or in any way aid in the institution or prosecution of any claim, demand, action or cause of action of whatever kind, arising from the aforesaid collision.

[BNSF0021]. The Release further provides: "Claimants also fully and specifically release Patrick Han, M.D., Jamie Kay Detre's treating physician, from any and all claims and liabilities of any kind or nature, whether or not heretofore asserted or otherwise known, to the same extent that Defendants are released in this document." [*Id.*]

Han contends that the Release is ambiguous as to him, because it releases him only to the extent that BNSF is released and that BNSF is released only as to damages resulting from the train collision. The Court sees no such ambiguity. The Release clearly releases Han and BNSF from all liability from Detre's injuries flowing from the 2004 train accident.

This would include the CCF that Detre suffered and which apparently led to her death in August 2006. The Release covers "all damages, past, present or future" resulting from the 2004 accident, and recites that it includes "all incidents, damages, expenses and future consequences of this accident." [BNSF 0021-21]. The language constitutes a full release of Han for all such damages as well.

"In Oklahoma, the cardinal rule in contract interpretation is to determine and give effect to the intent of the parties." *In re Kaufman*, 37 P.3d 845, 853 (Okla. 2001). When contract provisions are clear, consistent, and unambiguous, courts look to the plain and ordinary meaning of the language to determine and give effect to the parties' intent. *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376–77 (Okla. 1991); 15 O.S. 2011, §§ 152, 154, 160. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ." Okla. Stat. tit. 15 § 155. The Court sees no ambiguity in the language of the Release; therefore, the requested discovery is irrelevant.

## V
## DISCOVERY PLAN GOING FORWARD

To provide guidance to the parties, the Court proposes that the following discovery proceed:

Completion of the Rule 30(b)(6) deposition of Kamalah Minor, within the limits discussed above.

Discovery regarding the factual bases for BNSF's assertions:
- that it and Han are jointly responsible for Detre's death;
- that Detre died "as a direct result" of Han's negligence;
- that Han treated Detre in a negligent manner;
- that BNSF's role in Detre's death was "limited";
- that the 2004 crossing collision "played some part" in causing Detre's injuries and death;
- that the 2004 crossing collision was causally related to Detre's CCF;
- that the $1 million settlement sum "far exceeded" BNSF's liability for Detre's personal injuries and death.
- BNSF's position as to the direct and indirect causes of Detre's death;
- BNSF's position as to the proportionate fault of BNSF and Han in causing Detre's injuries and death;

Discovery regarding drafts of the Settlement Agreements between BNSF and the Estate.

This plan does not preclude appropriate depositions and discovery of the Estate concerning the events surrounding the 2004 collision, Detre's personal injury damages, damages resulting from Detre's death, and the like. Again, the focus in discovery should be the *facts* surrounding the 2004 collision (and events from September 1, 2002, concerning the railroad crossing at issue), the *facts* indicating that BNSF and Han are jointly responsible for Detre's death, *facts* regarding causation of Detre's death (including, whether there is any causal connection between Han's treatment of Detre and her death), and *facts* regarding the appropriate allocation of fault for Detre's death as between Han and BNSF.[10]

---

[10] Han has indicated that there may be other healthcare providers that should be included as joint tortfeasors with BNSF and Han. The Scheduling Order [Dkt. No. 30] provides that motions to join additional parties are to be filed by February 17, 2015. [*Id.* at ¶ 2].

**DATED** this 28th day of January 2015.


Paul J. Cleary
United States Magistrate Judge