UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

BURLINGTON NORTHERN & SANTA FE )
RAILWAY COMPANY, )
 )
      Plaintiff, )
 )
v. ) Case No. 14-CV-0069-CVE-PJC
 )
PATRICK PILGYUN HAN, M.D., )
 )
      Defendant. )

## OPINION AND ORDER

Now before the Court are Defendant's Objection to Magistrate Judge's Order on "Detailed Discovery Plan" and Brief in Support (Dkt. # 47) and Defendant's Alternative Motion to Certify Questions to Oklahoma Supreme Court and Supporting Brief (Dkt. # 48). Defendant Patrick Pilgyun Han, M.D. appeals the magistrate judge's discovery order (Dkt. # 46) and asks the Court to expand the scope of discovery. In the alternative, defendant asks the Court to certify two questions of law to the Oklahoma Supreme Court.

### I.

Burlington Northern & Santa Fe Railway Company (BNSF) alleges that it was sued in Creek County District Court by Jamie Kay Detre for personal injuries suffered when a train collided with her automobile in 2004. Detre died while the case was pending and Detre's estate (the Estate) added a claim of wrongful death against BNSF. The parties conducted settlement negotiations and they agreed to settle the case for $1 million. The settlement agreement included language releasing BNSF and Dr. Han from further liability to the Estate. Specifically, the release states that "Claimants also fully and specifically release [Dr. Han], Jamie Kay Detre's treating physician, from

any and all claims and liabilities of any kind or nature, whether or not heretofore asserted or otherwise known, to the same extent that [BNSF is] released in this document." Dkt. # 47-6, at 3. BNSF initially filed a case in Tulsa County District Court seeking contribution and indemnification from Dr. Han. BNSF subsequently dismissed without prejudice its claims against Dr. Han. On February 18, 2014, BNSF filed this case seeking contribution from Dr. Han, and Dr. Han filed a motion to dismiss on the grounds that BNSF had not alleged that it was a joint tortfeasor with Dr. Han and that BNSF failed to assert a statute of limitations defense in the underlying case against Detre. The Court granted the motion to dismiss on the ground that BNSF failed to allege that it was a joint tortfeasor with Dr. Han, but the Court did not reach the statute of limitations issue. Dkt. # 17. BNSF filed an amended complaint realleging its contribution claim against Dr. Han, and Dr. Han again moved to dismiss the contribution claim on the ground that the wrongful death claim of the Estate would have been barred by the statute of limitations. The Court denied Dr. Han's second motion to dismiss. Dkt. # 22.

The parties filed a joint status report (Dkt. # 28) and it was apparent that there was substantial disagreement between the parties concerning the scope of discovery, and the Court referred the matter to Magistrate Judge Paul J. Cleary for consideration of a "detailed discovery plan." Dkt. # 29. Each party submitted opening and response briefs (Dkt. ## 33, 34, 38, 39) as to permissible topics for discovery, and the magistrate judge held a hearing on discovery issues. See Dkt. # 44. Following the hearing, the magistrate judge entered a 33 page opinion and order (Dkt. # 46) outlining general categories of discovery that would be permitted. As a general matter, he noted that Dr. Han did not contest the reasonableness of the amount of BNSF's settlement with Detre's estate. Dkt. # 46, at 11. Dr. Han sought discovery as to the subjective beliefs and

motivations of BNSF's settlement negotiators, but the magistrate judge found that this type of discovery was irrelevant and allowing this type of discovery would "do grave harm to the settlement process." Id. at 12-13. The magistrate judge authorized "narrowly focused" discovery as to bad faith or collusion during the settlement negotiations, but he would not allow Dr. Han to take depositions of persons who negotiated with settlement with Detre's estate. Id. at 21. Dr. Han sought to conduct broad discovery as to whether the settlement included any amount to settle Detre's demand for punitive damage, but the magistrate judge found that the discovery would be irrelevant when there was no adjudication of a specific amount of punitive damages and the reasonableness of the amount of the settlement was not at issue. Id. at 23. The magistrate judge permitted Dr. Han to conduct discovery concerning the 2004 accident and the damages alleged by Detre, but he limited discovery as to the conditions at the railroad crossing where the accident occurred to two years before Detre's accident. Id. at 24. He rejected many of Dr. Han's specific requests for discovery concerning the subjective intentions of BNSF when negotiating the settlement and what actually occurred during the settlement negotiations. Id. at 26-31.

Dr. Han appeals certain of the magistrate judge's discovery rulings. He contends that he should be permitted to conduct discovery as to what amount of punitive damages was intended to be included as part of the settlement, because punitive damages cannot be considered part of the common liability for a contribution claim. Dkt. # 47, at 9-15. He objects to the magistrate judge's characterization of the settlement amount as the "common liability" for plaintiff's contribution claim. Id. at 16. He argues that he should be permitted to take depositions of the persons who negotiated the settlement for BNSF to discover their subjective intentions when negotiating the settlement and preparing the settlement documents. Id. at 17-22. He also objects to the magistrate

3

judge's limitation on the scope of discovery concerning the scene of the accident, and he asks the Court not to treat the magistrate judge's statements that the language of the release is clear and unambiguous as binding on the parties. Id. at 23-27.

## II.

Federal magistrate judges may hear and determine any pretrial matter that is not dispositive of the case and must enter a "written order setting forth the disposition of the matter." 28 U.S.C. § 636(b)(1); Phillips v. Beierwaltes, 466 F.3d 1217, 1222 (10th Cir. 2006). Fed. R. Civ. P. 72(a) provides that an order of the magistrate judge on a pretrial matter that is not dispositive shall be set aside or modified only if the order is found to be clearly erroneous or contrary to law. Under this standard, the district court should affirm the magistrate judge's order "unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Allen v. Sybase, Inc., 468 F.3d 642, 658 (10th Cir. 2006) (quoting Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1464 (10th Cir. 1988)).

## III.

### A.

The Court will initially consider defendant's argument that he should be permitted to conduct discovery concerning the subjective beliefs and motivations of the persons settling the claim on behalf of BNSF during the negotiations with the Estate. Defendant asserts that he should be permitted to conduct wide-ranging discovery requiring plaintiff to explain "why it settled, how it arrived at what it paid, and how much it claims it overpaid and should be paid by the contribution defendant, and why." Dkt. # 47, at 22. In particular, defendant seeks to take the depositions of persons who negotiated the settlement because the subjective beliefs of these persons when they

4

negotiated the settlement is relevant to apportionment of the settlement for the purpose of contribution. Id. at 23. He argues that these subjective factors are relevant to the jury's consideration of the reasonableness of the settlement, and he objects to the magistrate judge's conclusion that the reasonableness of a settlement is a purely objective determination.[1]

Oklahoma has adopted the Uniform Contribution Among Tortfeasors Act ("UCATA"), codified at Okla. Stat. tit. 12, § 832. UCATA promotes two policy goals: (1) to encourage settlement in multiparty litigation; and (2) to provide a fair distribution of the responsibility for the plaintiff's injury. Dacotah Marketing & Research, L.L.C., v. Versatility, Inc., 21 F. Supp. 2d 570, 575 (E.D. Va. 1998). To achieve these goals, UCATA provides:

> H. When a release, covenant not to sue, or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
>
> 1. It does not discharge any other tort-feasor from liability for the injury or wrongful death unless the other tort-feasor is specifically named; but it reduces the claim against others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is greater; and
>
> 2. It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

Okla. Stat. tit. 12, § 832(H). The Oklahoma Supreme Court recognizes that contribution may still be used to apportion liability against a settling defendant if "the settlement with the plaintiff was not reasonable because the settling tortfeasor paid more than the plaintiff's claim was worth or because

---

[1] The magistrate judge found that defendant was not challenging the reasonableness of the settlement, and defendant objects to the magistrate judge's characterization of defendant's arguments. Dkt. # 46, at 11-13; Dkt. # 47, at 14-15. The Court has reviewed the language cited by the magistrate judge and finds that it was reasonable for him to conclude that defendant was not challenging the reasonableness of the settlement. See Dkt. # 38, at 5. However, the Court will make no such assumption and will assume that defendant intends defend against plaintiff's contribution claim on the ground that the settlement was unreasonable.

5

the settlement was not made in good faith." Barringer v. Baptist Healthcare of Oklahoma, 22 P.3d 695, 698 (Okla. 2001). However, the Oklahoma Supreme Court has not adopted a standard to determine if a settlement was entered in good faith or if a settlement was reasonable.

The magistrate judge found that the Oklahoma Supreme Court would likely apply an objective test to determine the reasonableness of a settlement, but he did note that certain subjective factors could be relevant. Dkt. # 46, at 12. These subjective factors could include "the degree of certainty of the tortfeasor's subjection to liability, the risks of going to trial, and the chances that the jury verdict might exceed the settlement offer." Id. However, he found that allowing discovery concerning the subjective beliefs of persons involved in settlement negotiations would tend to discourage settlements if the confidentiality of negotiations could be violated in a subsequent contribution action. Id. at 13.

Defendant argues that discovery as to the subjective beliefs of the persons negotiating the settlement "goes directly to whether [plaintiff] paid more than its proportionate share of liability when it settled . . . ." While defendant may want to conduct this discovery, defendant has not shown that the magistrate judge's decision to limit discovery from the persons negotiating the settlement was clearly erroneous or contrary to law. Defendant relies heavily on Home Ins. Co. v. Advance Machine Co., 443 So. 2d 165 (Fla. Dist. Ct. App. 1983), to support his argument that discovery into the subjective motivations of persons negotiating a settlement is permitted in a contribution action. While the Oklahoma Supreme Court cited Home Ins. Co. in Barringer, the Oklahoma Supreme Court listed the case in a string cite of cases stating the general purpose of contribution, and there is nothing that would suggest the Oklahoma Supreme Court was adopting a subjective approach to the reasonableness of settlements in contribution cases. See Barringer, 22 P.3d at 698-99. The Court

has found no other cases that would allow discovery into the subjective considerations of the persons settling a prior lawsuit, nor does this Court find that depositions of the persons who negotiated a settlement would be relevant in a contribution case. The magistrate judge's discovery order specifically allows defendant to "obtain any written communications between BNSF and the Estate, and drafts of the final Settlement Agreement between the settling parties," (Dkt. # 46, at 25) and this discovery will provide defendant notice of what considerations went into the settlement. The Court finds that the discovery authorized by the magistrate judge was reasonable, and his decision to deny defendant's request to depose the persons negotiating the settlement for BNSF about their subjective beliefs during the negotiations was not clearly erroneous or contrary to law.

**B.**

Defendant argues that the magistrate judge erred by referring to the settlement amount of $1 million as the "common liability" to be apportioned among the potential joint tortfeasors. Dkt. # 47, at 16-17. Defendant claims that settlement should be "segregated to isolate that portion which actually may serve as the 'common liability,'" because the Estate alleged multiple claims and it is not clear for which portions of the settlement the parties could be found jointly liable. Id. at 17. Plaintiff responds that the magistrate judge's conclusion that the settlement represents the amount of common liability is correct and that defendant's arguments are "without merit." Dkt. # 54, at 11.

Defendant submitted a list of deposition topics about which he sought to inquire during a deposition of BNSF's corporate representative. Dkt. # 34-2. One of these topics was the "dollar amount of the common liability of BNSF and Dr. Han and all facts information and documents that support that determination." Id. at 2. The magistrate judge found that discovery on this issue was unnecessary because the topic "has been answered by the settlement itself." Dkt. # 46, at 26. He

7

further stated that many of the topics about which defendant sought to inquire of plaintiff's corporate representative "will be determined by the factfinder at trial" and that "exploration of these topics may be unproductive until after the parties have exchanged expert reports." Id.

Defendant argues that the settlement between the Estate and plaintiff cannot be treated as the "common liability," because the settlement included amounts for which he cannot be held responsible. According to defendant, "the settlement must be segregated to isolate that portion which actually may serve as the 'common liability.'" Dkt. # 47, at 17. This is effectively the function of the jury in a contribution action, and the Court finds no error in the magistrate judge's reference to the settlement as the "common liability." Defendant can argue to the jury that he should not be held liable for certain portions of the settlement, but the Court cannot invade the role of the factfinder and "segregate" out portions of the settlement for which defendant feels that he cannot be held responsible. The Court does not find that the magistrate erred by referring the settlement amount as the "common liability" for the purpose of plaintiff's contribution claim.

## C.

Defendant objects to the magistrate judge's ruling that discovery should not be permitted on the issue of whether the settlement between the Estate and plaintiff included some amount to settle the Estate's demand for punitive damages.[2] Defendant argues that the magistrate judge denied his request to conduct discovery on the issue of punitive damages based on a misunderstanding of contribution law, and he seeks leave to conduct discovery as to "how much of the $1 million

---

[2] Both parties refer to the Estate's "claim" for punitive damages. A demand for punitive damages is not a separate claim, but it is simply an element of the recovery sought by the Estate in its tort action against plaintiff. Greer v. SunTrust Mortg., Inc., 2013 WL 5520010, *9 (N.D. Okla. Oct. 3, 2013).

settlement payment to attribute to the risk" of plaintiff's liability for punitive damages. Dkt. # 47, at 15. Plaintiff responds that the magistrate judge correctly decided that discovery should not permitted on the issue of punitive damages when there was no specific adjudication of punitive damages against plaintiff. Dkt. # 54, at 6. Plaintiff also disputes that the alleged conduct giving rise to the Estate's claims would support the award of punitive damages. Id. at 7-8.

The magistrate judge noted that defendant seeks "broad discovery" concerning the Estate's demand for punitive damages, although the specifics of the proposed discovery were not outlined in defendant's briefing. Dkt. # 46, at 21. He noted that there was "little guidance" from Oklahoma courts concerning whether a settling party may obtain contribution when a settlement may include some amount to settle a demand for punitive damages, but he derived three principles from general contribution law. First, he concluded that a tortfeasor could not obtain contribution if the tortfeasor was found to have engaged in intentional misconduct. Id. at 22. Second, a tortfeasor who was "specifically adjudicated" to be liable for punitive damages could not seek contribution for that portion of a verdict. Id. Third, the mere fact that a plaintiff in a tort case seeks punitive damages does not open the door to "wide-ranging discovery trying to parse the distinction between ordinary negligence and willful/wanton conduct." Id. at 23. In this case, plaintiff had not been accused of engaging in intentional misconduct and it had not been specifically adjudicated to be liable for punitive damages. The magistrate judge also found that defendant was not challenging the reasonableness of the settlement and the issue of punitive damages was irrelevant to apportionment of the settlement. Id.

The Court agrees with the magistrate judge's conclusion that broad discovery as to whether the settlement included some amount to settle the Estate's demand for punitive damages would be

9

irrelevant. Defendant's objection (Dkt. # 47, at 10 n.10) demonstrates that he fully understands the basis for the Estate's demand for punitive damages, and defendant may argue to the jury that the settlement may have included some amount to avoid the risk of punitive damages. This may include defendant's argument that the settlement can be viewed as reasonable only if the jury infers that the settlement included some amount for plaintiff's potential liability for punitive damages. Dkt. # 47, at 14-15. In any event, the magistrate judge specifically authorized defendant to conduct discovery as to "any written communications between BNSF and the Estate, and drafts of the final Settlement Agreement between the settling parties." This discovery should be sufficient for defendant to determine if the settlement actually included some amount to resolve the Estate's demand for punitive damages. In fact, the discovery authorized by the magistrate judge is far more likely to be probative of whether the settlement actually included some amount for punitive damages, because the subjective beliefs of persons negotiating the settlement may not actually reflect the terms of the settlement agreement.[3] The Court finds that the magistrate judge appropriately limited discovery on this issue of punitive damages, and his ruling was not clearly erroneous or contrary to law.

**D.**

Defendant objects to the magistrate judge's ruling that discovery concerning accidents at the railroad crossing where Detre was injured should be limited to incidents no more than two years before Detre's accident. Defendant argues that he was permitted to conduct discovery going back four years before the accident in the prior state court contribution action and, in the alternative, he

---

[3] The Court notes that plaintiff could open the door to discovery of this type of evidence if plaintiff attempts to rely on the opinions or statements of persons who negotiated the settlement with the Estate.

requests leave to use evidence that he had previously gathered concerning incidents more than two years before Detre's accident.

The Court does not find that the magistrate judge's decision to limit discovery of other accidents at the subject railroad crossing was clearly erroneous or contrary to law, and the Court finds that his discovery ruling strikes a reasonable balance of permitting relevant discovery without subjecting plaintiff to a burdensome discovery request. However, defendant should be permitted to use evidence that is already in his possession that concerns incidents more than two years before Detre's accident. In addition, if plaintiff's expert intends to rely on evidence more than two years before Detre's accident, plaintiff will be required to produce that evidence to defendant and such reliance could open the door to additional discovery concerning accidents at the railroad crossing. See Dkt. # 47, at 23.

**E.**

Defendant objects to the magistrate judge's opinion and order to the extent that any statement by the magistrate judge could be treated as a binding ruling on defendant's argument that the language of the release of defendant in the settlement agreement is ambiguous. Defendant asks the Court to defer a final ruling on this issue until discovery is completed and the matter can be raised in an appropriate dispositive motion.[4]

---

[4] Defendant states that he should be permitted to complete discovery and present arguments to a jury as to the cause of Detre's death before the Court rules on the alleged ambiguity of the language of the release. Dkt. # 47, at 26-27. Whether a contractual provision is ambiguous is a matter of law that is decided by the Court and the jury's finding as to causation has no bearing on this issue. This issue of law can be resolved by dispositive motion before trial.

The Court has reviewed the language of the release relating to Dr. Han and the magistrate judge's discovery ruling, and finds that the magistrate judge appropriately denied defendant's requests to take deposition testimony concerning any alleged ambiguity in the release. The Court will determine as a matter of law if there is any ambiguity in the language of the release, and deposition testimony on this issue would be irrelevant. The Court does not treat any statement by the magistrate judge as a binding finding on the ambiguity issue, and the Court agrees that it would be premature to resolve this issue as part of a discovery ruling. However, the Court does not find that the magistrate judge made any finding that would preclude defendant from arguing that the release is ambiguous, and this aspect of defendant's objection is moot.

**IV.**

Defendant asks the Court to certify two questions of law to the Oklahoma Supreme Court. First, defendant argues that the magistrate judge incorrectly determined that plaintiff can recover any portion of the settlement with the Estate to extent that the settlement resolved the Estate's demand for punitive damages. Second, defendant asks the Court to certify the issue of whether plaintiff's contribution claim is barred due its failure to assert a statute of limitations defense in the underlying state court action brought by the Estate.

The decision to certify a question of law to a state court is within the discretion of a federal district court. See Oliveros v. Mitchell, 449 F.3d 1091, 1093 (10th Cir. 2006); Coletti v. Cudd Pressure Control, 165 F.3d 767, 775 (10th Cir. 1999); Allstate Ins. Co. v. Brown, 920 F.2d 664, 667 (10th Cir. 1990). Under OKLA. STAT. tit. 20, § 1601.2, the Oklahoma Supreme Court has the power to accept a certified question from a federal court if the outcome of the federal litigation depends on a controlling issue of state law and the issue cannot be resolved by reference to an Oklahoma

statute, constitutional provision, or judicial decision. Certification is appropriate "where the legal question at issue is novel and the applicable state law is unsettled," but a federal district court is not compelled to certify such issues to a state court. Society of Lloyd's v. Reinhart, 402 F.3d 982, 1001 (10th Cir. 2005). "Certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." Armijo v. Ex Cam, Inc., 843 F.2d 406, 407 (10th Cir. 1988).

The Court finds that it would be improper to certify either of the proposed questions of law to the Oklahoma Supreme Court. As to the punitive damages issue, it would be purely speculative at this point if the Court were to assume that plaintiff's settlement with the Estate actually included some amount of punitive damages, and it is not clear that the Court will have to decide this issue. The parties also overstate the magistrate judge's conclusion on this issue, and he did not specifically find that contribution is permitted for any portion of the settlement for punitive damages. See Dkt. # 46, at 22-23. The magistrate judge noted that a tortfeasor who engaged in intentional misconduct has no right to contribution, and he observed that plaintiff was not accused of any intentional misconduct, nor had plaintiff been specifically adjudicated to be liable for punitive damages. Id. at 22. In terms of defendant's proposed discovery, the magistrate judge concluded that opening the door to discovery as to punitive damages "would subject the Court and the parties to needless satellite litigation." Id. at 23. However, the magistrate judge did not specifically conclude that plaintiff could seek contribution for any amount of punitive damages included in its settlement with

the Estate.[5]  As to the statute of limitations issue, defendant conditions his request for certification of this issue on the Court's decision to certify the punitive damages issue, and defendant does not independently request certification of the statute of limitations issue. Dkt. # 59, at 6.  The Court has not found that it would be appropriate to certify the punitive damages question to the Oklahoma Supreme Court, and the Court declines to certify the statute of limitations issue to the Oklahoma Supreme Court.

**IT IS THEREFORE ORDERED** that Defendant's Objection to Magistrate Judge's Order on "Detailed Discovery Plan" and Brief in Support (Dkt. # 47) is **denied in part** and **moot in part**: defendant's argument concerning the alleged ambiguity of the release is moot, and defendant's appeal of the magistrate judge's order is denied in all other respects.

**IT IS FURTHER ORDERED** that Defendant's Alternative Motion to Certify Questions to Oklahoma Supreme Court and Supporting Brief (Dkt. # 48) is **denied**.

**DATED** this 17th day of April, 2015.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[5]  In plaintiff's response to defendant's motion to certify, plaintiff states that Oklahoma law specifically "allows the recovery of contribution for punitive damages, in situations such as this, where there is no intentional conduct." Dkt. # 55, at 2.  The magistrate judge made no such finding and, at the appropriate time, the parties may fully present their arguments on this issue.