UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

BURLINGTON NORTHERN & SANTA FE ) 
RAILWAY COMPANY, )
 )
        Plaintiff, )
 )
v. ) Case No. 14-CV-0069-CVE-PJC
 )
PATRICK PILGYUN HAN, M.D., )
 )
        Defendant. )

**OPINION AND ORDER**

Now before the Court is Defendant Han's Motion for Summary Judgment and Supporting Brief (Dkt. # 71). Defendant Patrick Pilgyun Han, M.D., argues that he cannot be held liable for contribution to plaintiff Burlington Northern & Santa Fe Railway Company (BNSF), because the release executed by BNSF did not release Dr. Han from all potential liability to the underlying tort claimant and BNSF has no evidence that it is a joint tortfeasor with Dr. Han. Dkt. # 71. BNSF responds that the release executed with the underlying tort claimant was sufficient to give rise to a right of contribution for BNSF, and it argues that it has admitted that it had some role in the accident that it alleges caused the tort claimant to seek medical treatment from Dr. Han. Dkt. # 73.

**I.**

On September 1, 2004, Jamie Kay Detre was injured when her vehicle collided with a train operated by BNSF. Dkt. # 18-1, at 2. Detre filed a lawsuit against BNSF in Creek County District Court seeking actual and punitive damages in excess of $10,000. Id. at 3. On August 26, 2006, Detre sought treatment from Dr. Han for a direct traumatic carotid cavernous fistula (CCF). She died two days after she visited Dr. Han. The Estate of Jamie Kay Detre (the Estate) amended the

complaint in the state court lawsuit to include a wrongful death claim against BNSF. Dkt. # 18-2. The Estate did not add Dr. Han as a party in the state court lawsuit. However, he was deposed as part of the state court lawsuit, and he testified that the train accident caused Detre's CCF. Dkt. # 71-1, at 32. Dr. Han stated "with very strong medical certainty that this [CCF] was caused by the train accident. Id. BNSF retained a medical expert, David Fell, M.D., to testify as to the cause of Detre's death, and Dr. Fell believed that the CCF occurred spontaneously and he thought it was "preposterous" that the train accident could have caused Detre's CCF. Id. at 37. BNSF also retained an expert radiologist, Matt Powers, M.D., and Dr. Powers stated the following opinions:

> 8. Dr. Han's opinion that the train accident caused the cavernous fistula suffered by Jamie Detre is completely unsupported by the medical literature and is contrary to the scientific principals [sic] supporting the study of human physiology.
>
> 9. The medical evidence is clear that Jamie Detre did not suffer the type of facial injury, especially fracture of facial bones or other types of trauma to the face that would cause a cavernous fistula. Moreover, the cavernous fistula suffered by Jamie Detre did not occur for more than one year after the accident. It is medically and scientifically improbable that a cavernous fistula would be asymptomatic or delay manifestation for a period of several months and certainly more than a year.
>
> 10. Jamie Detre's collision with the train in this case occurred on September 1, 2004. Dr. Han treated Ms. Detre's carotid cavernous fistula from August 26, 2006 until her death on August 28, 2006, was wholly unrelated to her train accident. Dr. Han's surgical intervention on August 25, 2006 was not necessitated by, or related to, the September 1, 2004 train collision.

Dkt. # 71-1, at 40.

The Estate and BNSF signed a mediation agreement on September 9, 2010. Id. at 43. The Estate agreed to dismiss with prejudice its claims against BNSF in exchange for the payment of $1,000,000. Id. Dr. Han was not mentioned in the mediation agreement. The Estate and BNSF subsequently executed a release in which the Estate:

2

> hereby release[d] and forever discharge[d] . . . . [BNSF] . . . from any and all claims and liabilities of every kind and nature whatsoever resulting from a collision between a train and vehicle which occurred in Creek County, Oklahoma, on or about the 1st day of September 2004 in which Jamie Kay Detre was the driver of the vehicle. This Agreement includes all damages, past, present or future, resulting from said accident. . . . Claimants understand that this release covers all incidents and damages, expenses and future consequences of this accident.
>
> Claimants further covenant and agree that they will never institute any further suit, action at law or otherwise against . . . [BNSF] . . . nor institute or prosecute or in any way aid in the institution or prosecution of any claim, demand, action or cause of action for whatever kind, arising from the aforesaid collision.
>
> In this Release, Claimants also fully and specifically release Patrick Han, M.D., Jamie Kay Detre's treating physician, from any and all claims and liabilities of any kind or nature, whether or not heretofore asserted or otherwise known, to the same extent that Defendants are released in this document.

Dkt. # 71-1, at 45-46. The release states that it is a "FULL AND FINAL RELEASE OF ALL CLAIMS . . . between Claimants and the parties released . . . ." Id. at 50. However, the final paragraph of the Release states that the claimants "UNDERSTAND THAT THIS RELEASE EXTINGUISHES ALL OF THE CLAIMS RELATING TO THE SEPTEMBER 1, 2004 ACCIDENT, WHETHER OR NOT MADE IN THE PETITION FILED ON DECEMBER 20, 2005." Id. at 51.

BNSF filed a lawsuit in Tulsa County District Court seeking indemnification and contribution from Dr. Han. Id. at 54-57. BNSF alleged that Detre's "death was not caused by the collision with BNSF's train," and it claimed that Detre's death was caused solely by Dr. Han's negligent medical treatment of Detre. Id. at 55-56. BNSF made no allegations that it was a joint tortfeasor with Dr. Han, and it denied any responsibility for Detre's death. Id. at 56. The parties appeared before the state court for a hearing on a discovery matter, and BNSF acknowledged that it sought to withdraw its contribution claim against Dr. Han. Id. at 70-71. BNSF expressly

disclaimed any argument that was a joint tortfeasor with Dr. Han and, instead, it took the position that Dr. Han was solely responsible for Detre' death. Id. at 71-72. Counsel for BNSF clearly stated his client's position as follows:

> I mean, we are not joint tortfeasors; okay? So it doesn't matter, as the court has pointed out several times, why that wreck happened or when it happened. Frankly, it doesn't even matter what the amount of the settlement was. This jury is going to have to arrive at what the valuation is for Dr. Han's own conduct in bringing out this successive and unrelated tort. We're only entitled to be paid back what we, as an indemnitor, paid, but it's not a "you paid X and we should pay Y, because together we brought about this injury."

Id. at 96-97. Dr. Han took the position that the train accident gave rise to Detre's CCF and that the railroad's negligence was the reason Detre came to him for treatment. Id. at 74. Based on the parties' arguments, it appears that BNSF dropped the contribution aspect of its case in an attempt to keep out evidence about the train accident, because BNSF argued that Detre had fully healed from any injuries caused by the accident and that the relevant issue was whether Detre's CCF was related to the accident. Id. at 81-83. Under this theory, BNSF argued that it was an indemnitor for Dr. Han, because it bore no liability for Detre's wrongful death claim and it should be able to receive indemnification as a fault-free party as to the wrongful death claim. Id. at 99.

BNSF voluntarily dismissed its claims against Dr. Han in state court and, on February 18, 2014, it filed this case alleging a contribution claim against Dr. Han. BNSF stated that Detre died as a result of Dr. Han's grossly negligent medical treatment and that Detre's "death was not caused by the collision with BNSF's train." Dkt. # 2, at 2. BNSF acknowledged that it "played some part in bringing about personal injury to [Detre], but alleges that her death was caused by the negligence of [Dr. Han.]" Id. at 3. Dr. Han filed a motion to dismiss the complaint and argued, inter alia, that the contribution claim should be dismissed because BNSF failed to allege that it was a joint

4

tortfeasor with Dr. Han. Dkt. # 11, at 6-9. The Court granted the motion to dismiss and found that it was "apparent that [BNSF] is attempting to completely distance itself from any liability for Detre's death." Dkt. # 17, at 4. The claim alleged in BNSF's complaint was essentially a claim for indemnification and, to state a contribution claim, BNSF would be "required to affirmatively allege that its actions played some role in Detre's alleged wrongful death." Id. BNSF filed an amended complaint making the following allegations:

> 15. Plaintiff BNSF alleges the crossing collision played some part in bring about the personal injury to Jamie Kay Detre.
>
> 16. BNSF's conduct thus played a role in [Detre's] death.
>
> 17. BNSF's role was limited.
>
> 18. [Detre] was injured in a crossing collision incident.
>
> 19. Dr. Han's negligent medical treatment aggravated or enhanced the initial personal injuries to [Detre]. Dr. Han's negligent medical treatment resulted in [Detre's] death approximately two years after the crossing collision.
>
> 20. BNSF alleges that the crossing collision was causally related, to some degree, to the condition for which Dr. Han treated [Detre].
>
> 21. More importantly, it was reasonably likely that a jury in the Detre action could have concluded that the crossing collision resulted and/or contributed to the personal injuries that eventually led and/or contributed to [Detre] being treated by Dr. Han. Such was alleged by the Detre estate in the Detre action.

Dkt. # 18, at 3-4. In the parties' joint status report (Dkt. # 28), Dr. Han summarized his defenses and stated that Detre sought treatment from Dr. Han for the CCF, a condition that was directly caused by the Crossing accident." Dkt. # 28, at 2.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.

5

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

Defendant argues that BNSF cannot recover for contribution, because BNSF has taken the position that its actions did not cause or contribute to Detre's death. Dkt. # 71, at 7-10. Defendant

also argues that BNSF has no right to contribution, because the release executed by the Estate failed to extinguish all potential liability that Dr. Han might have to the Estate. Id. at 11-16.

**A.**

Dr. Han argues that BNSF has failed to admit that it has common liability with Dr. Han for Detre's death, and it is prohibited from seeking contribution from Dr. Han as a matter of law. Dkt. # 71, at 7. BNSF responds that Dr. Han testified in a deposition that the condition for which he treated plaintiff was caused by the train accident and there is a genuine dispute as to whether Dr. Han and BNSF can be treated as joint tortfeasors for the purpose of a contribution claim. Dkt. # 73, at 22-28.

Oklahoma has adopted the Uniform Contribution Among Tortfeasors Act and it is codified at OKLA. STAT. tit. 12, § 832. Under § 832.A., "[w]hen two or more persons become jointly or severally liable in tort for the same injury to person or property for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them . . . ." The purpose of the statute is to provide "judicial control over the distribution of damages in tort claims in which there is more than one tortfeasor." Barringer v. Baptist Healthcare of Oklahoma, 22 P.3d 695, 698 (Okla. 2001). A tortfeasor is entitled to contribution only when it has paid more than its pro-rata share of a common liability. Berry v. Empire Indem. Ins. Co., 634 P.2d 718, 719-20 (Okla. 1981). A tortfeasor's pro-rata share is determined based on its proportionate degree of fault for the common liability. Nat'l Union Fire Ins. Co. A.A.R. Western Skyways, Inc., 784 P.2d 52, 57 (Okla. 1989). On the other hand, a right to indemnification may "exist[] when one who is only constructively liable to the injured party and is no manner responsible for the harm is compelled to pay for the tortious act of another." Caterpillar Inc. v. Trinity Indus.,

7

Inc., 134 P.3d 881, 886 (Okla. Civ. App. 2005). Oklahoma does not recognize a right to indemnification among joint tortfeasors. Id.

The evidence presented by the parties concerning Dr. Han's treatment of Detre is not substantial. Dr. Han testified in a deposition during the underlying tort case that he believed with "strong medical certainty that [Detre's CCF] was caused by that train accident." Dkt. # 71-1, at 32. BNSF's experts in that case opined that plaintiff's CCF was entirely unrelated to the train accident. Id. at 37 (Dr. Fell testified that it was extremely unlikely that plaintiff's CCF had any causal relation to the train accident); Id. at 40 (Dr. Powers stated that Dr. Han's opinion was "unsupported by the medical literature and is contrary to the scientific principals [sic] supporting the study of human physiology").

The arguments of both parties miss the mark in terms of the issue of common liability, because the parties are focused on BNSF's willingness to admit that it had some role in Detre's death. The issue is much more straightforward than the parties' briefing would suggest. The Court is ruling on a motion for summary judgment, and the BNSF's allegations are relevant only to the extent that the allegations frame the issues that should be adjudicated by the Court. In order to show that it is entitled to contribution, BNSF must come forward with evidence establishing two essential points: (1) BNSF's conduct caused the condition for which Dr. Han treated Detre; and (2) Dr. Han's treatment was below the applicable standard of care and enhanced or aggravated the injuries suffered by Detre. Dr. Han's own deposition testimony in a prior case is sufficient to establish a genuine dispute as to whether plaintiff's CCF was caused by the train collision. He stated with "strong medical certainty" that he treated Detre for CCF as a result of the train accident. Id. at 32. Dr. Han's deposition testimony conflicts with the expert opinions offered by BNSF in the underlying

8

tort case, and there is evidence that Detre's CCF is entirely unrelated to the collision. The Court cannot resolve this factual dispute when ruling on a motion for summary judgment, and the cause of Detre's CCF is material fact that must be determined by the jury. Due to this genuine dispute as to a material fact, the Court finds that defendant's motion for summary judgment should be denied.

**B.**

Defendant argues that the release executed by BNSF and the Estate failed to extinguish all potential liability that Dr. Han might have to the Estate, because the release was limited to liability stemming from the train accident and it would not prevent the Estate from bringing a wrongful death claim against Dr. Han for wrongful death unrelated to the train accident. Dkt. # 71, at 2. Plaintiff responds that Dr. Han was named in the release and the settlement extinguished any common liability he would have for claims arising out of the train accident, and the release was sufficient under Oklahoma law to allow BNSF to bring a contribution claim against Dr. Han.

"A settlement document is a contract and is construed using ordinary principles of contract interpretation." Anthony v. United States, 987 F.2d 670, 673 (10th Cir. 1993); see also Corbett v. Combined Commc'ns Corp. of Okla., Inc., 654 P.2d 616, 617 (Okla. 1982) ("A release is a contract."). Under Oklahoma law, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." OKLA. STAT. tit. 15, § 154. "A contract must be considered as a whole so as to give effect to all its provisions without narrowly concentrating upon some clause or language taken out of context." Lewis v. Sac & Fox Tribe of Okla. Housing Auth., 896 P.2d 503, 514 (Okla. 1994). "The terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was

9

negotiated." Dodson v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okla. 1991); see also OKLA. STAT. tit. 15, § 160. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ." OKLA. STAT. tit. 15, § 155. "Interpretation of contracts, and whether they are ambiguous, are matters of law for the court to determine." Livesay v. Shoreline, L.L.C., 31 P.3d 1067, 1070 (Okla. Civ. App. 2001) (citing Osprey L.L.C. v. Kelly Moore Paint Co., 984 P.2d 194 (Okla. 1999)).

In this case, the parties dispute whether the language of the release was sufficient to give rise to a right of contribution against Dr. Han. Oklahoma follows the "specific identity rule," which provides that an agreement to release a party from liability applies only to the parties "designated by name or otherwise specifically identified." McKissick v. Yuen, 618 F.3d 1177, 1193 (10th Cir. 2010) (quoting Moss v. City of Oklahoma City, 897 P.2d 280, 288 (Okla. 1995)). Section 832 has been amended to incorporate this rule, and a release "does not discharge any other tort-feasor from liability for the injury or wrongful death unless the other tort-feasor is specifically named." OKLA. STAT. tit. 12, § 832.H.1. In order for a settling tortfeasor to bring a contribution claim against another non-settling tortfeasor, the release must extinguish the full amount of the plaintiff's claims against the non-settling tortfeasor. Barringer, 22 P.2d at 698.

There is no dispute that Dr. Han was specifically named in the release with the Estate and that the release extinguishes any claim that the Estate might have against Dr. Han "to the same extent that Defendants are released in this document." Dkt. # 71-1, at 45. BNSF obtained a release from the Estate for all "claims and liabilities of every kind and nature which have arisen or which may hereafter arise, together with all other damages of any nature whatsoever resulting from a collision between a train and vehicle which occurred in Creek County, Oklahoma, on or about the

1st day of September 2004 . . . ." Id. at 1. The Release later states that it is intended to constitute a "FULL AND FINAL RELEASE OF ALL CLAIMS" against the parties named in the release. Id. at 6. Construing the document as a whole, the Court finds no merit in defendant's argument that the Estate maintained a right to sue him for negligence arising out of his treatment of Detre. Dr. Han was released to the same extent as BNSF, and the settlement constituted a complete release of the Estate's wrongful death claim against BNSF. In other words, the Estate gave up its right to sue Dr. Han and BNSF for the alleged wrongful death of Detre by accepting the terms of the settlement. Defendant argues that the release is valid only as to claims arising out of the train collision and the Estate could have brought a claim against Dr. Han on the theory that Detre's death was not caused by the collision. Dkt. # 71. Even if the Estate had a theoretical right to sue Dr. Han, no such claim was filed and the statute of limitations has long since expired. The Court finds that the release constituted a full release of the Estate's claims against Dr. Han, and the release was sufficient under § 832 to allow BNSF to bring a contribution claim against Dr. Han.

**IT IS THEREFORE ORDERED** that Defendant Han's Motion for Summary Judgment and Supporting Brief (Dkt. # 71) is **denied**.

**DATED** this 24th day of August, 2015.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE